# 17-165

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆━◆

UNITED STATES OF AMERICA,

*Appellee,*

—against—

LANDONG WANG,

*Defendant,*

DAN ZHONG,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR BAIL AND APPEAL FROM DENIAL OF BAIL

NATHANIEL H. AKERMAN
JOSHUA COLANGELO-BRYAN
DORSEY & WHITNEY LLP
51 West 52nd Street
New York, New York 10019
(212) 415-9200

*Attorneys for Defendant-Appellant*

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ............................................... ii

PRELIMINARY STATEMENT ........................................... 1

ARGUMENT ............................................................ 2

    I.    Standard of Review ............................................. 2

    II.   The District Court's Refusal to Hold the Bail Hearing
           It Had Scheduled Was Clear Error .............................. 3

    III.  The District Court's Reliance on the "Flight" of the
           Co-Defendant and the Workers to Find That Zhong
           Is a Flight Risk Was Clear Error................................. 9

    IV.  The District Court Improperly Dismissed the Use of a Security
           Firm Without Allowing the Defense to Respond to the
           Government's Arguments on that Issue.......................... 14

    V.   The District Court's Refusal to Permit Zhong to Address the
           Weight of the Evidence, While Crediting the Government's
           Arguments in that Regard, Was Clear Error..................... 16

    VI.  It Was Clear Error for the District Court Not to Consider
           Procedural Obstacles the Government Revealed Only
           Following the Appearance Before Judge Johnson .............. 18

    VII. The New Facts Demonstrate That This Is a Bailable Case..... 19

CONCLUSION............................................................ 20

i

## **TABLE OF AUTHORITIES**

PAGE(S)

## Cases

*U.S. v. Abuhamra*,
   389 F.3d 309 (2d Cir. 2004) …………………………………… 2

*U.S. v. Anderson*,
   384 F. Supp. 2d 32 (D.D.C. 2005) ………………………… 13

*U.S. v. John Ashe*,
   1:15-cr-706 (S.D.N.Y.) (Dkt. 13 Oct. 6, 2015) …………………… 12

*U.S. v. Baig*,
   536 Fed. Appx. 91 (2d Cir. 2013)………………………… 13

*U.S. v. Berrios-Berrios*,
   791 F.2d 246 (2d Cir. 1986) …………………………………… 2

*U.S. v. Briggs*,
   697 F.3d 98 (2d Cir. 2012) …………………………………… 13

*U.S. v. Friedman*,
   837 F. 2d 48 (2d Cir. 1988)………………………………… 13

*U.S. v. Gonzales Claudio*,
   806 F.2d 334 (2d Cir. 1986)……………………………… 18, 19

*U.S. v. Yaming Nina Qi Hanson*,
   613 F. Supp. 2d 85 (D.C. Cir. 2009)……………………… 12

*U.S. v. Alfred Hawit*,
   1:15-cr-252 (E.D.N.Y.) (Dkt. 207 Feb. 1, 2016) ………………… 12

*U.S. v. Hollender*,
   162 F. Supp. 2d 261 (S.D.N.Y. 2001) …………………………… 13

*U.S. v. Hurtado*,
   779 F.2d 1467 (11th Cir. 1985) ………………………………… 2, 17

*U.S. v. Eduardo Li*,
   1:15-cr-252 (E.D.N.Y.) (Dkt. 235 Feb. 24, 2016)………………… 12

PAGE(S)

*U.S. v. Francis Lorenzo*,
1:15-cr-706 (S.D.N.Y.) (Dkt. 30 Oct. 9, 2015) ...................... 12

*U.S. v. Minns*,
863 F. Supp. 360 (N.D. Tex. 1994) ................................... 13

*U.S. v. Ojeda Rios*,
846 F.2d 167 (2d Cir. 1988) ........................................... 20

*U.S. v. Sabhnani*,
493 F.3d 63 (2d Cir. 2007) ..................................... 1, 3, 14, 15

*U.S. v. Ng Lap Seng*,
1:15-cr-706 (S.D.N.Y.) (Dkt. 53 Oct. 23, 2015)................... 12

*U.S. v. Tortora*,
922 F.2d 880 (1st Cir. 1990) ......................................... 9

*U.S. v. Vitta*,
653 F. Supp. 320 (E.D.N.Y. 1986).................................... 19

*U.S. v. Zherka*,
592 Fed. Appx. 35 (2d Cir. 2015)................................... 13

**Statutes, Rules and Regulations**

18 U.S.C. § 3142 (Bail Reform Act):

18 U.S.C. § 3142(c)(1)(B) ............................................... 2, 3

18 U.S.C. § 3142(e) ...................................................... 2

18 U.S.C. § 3142(f)(2)(B)................................................ 19

18 U.S.C. § 3142(g)(2)................................................... 16

18 U.S.C. § 3161 (Speedy Trial Act)..................................... 5

Fed. R. Crim. P. 4(a)..................................................... 18

## **PRELIMINARY STATEMENT**

Appellant-Defendant Dan Zhong submits this Memorandum of Law in support of his appeal from the district court's decision of January 9, 2017, which denied his application for pretrial bail. As described in detail below and in the accompanying affirmation of Nathaniel H. Akerman ("Akerman Aff."), the January 9, 2017 order should be reversed because it was clear error for the district court to:

(1) schedule a bond hearing one month in advance and then, on the day of the scheduled hearing, refuse to hold it, thus precluding the defense from presenting material information that was not known during an initial bail hearing and from responding to a 25-page memorandum opposing bail the government was permitted to file prior to the scheduled hearing;

(2) rely on evidence unrelated to Zhong in finding he is a flight risk;

(3) dismiss the use of a security firm to monitor home detention without allowing the defense to address the government's arguments (and in circumstances nearly identical to those in *U.S. v. Sabhnani*, 493 F.3d 63 (2d Cir. 2007), where the Court approved using such a firm);

(4) preclude Zhong from introducing evidence relevant to the weight of the evidence on the government's forced labor charges, while crediting the government's arguments on that point; and

(5) fail to recognize that the procedural obstacles to a speedy trial the

government disclosed only after the initial bail hearing will result in many months

of pretrial detention.

## **ARGUMENT**

### I. **Standard of Review**

This Court reviews a district court's order regarding detention for clear error

"not only to the court's specific predicate factual findings but also to its overall

assessment, based on those predicate facts, as to the risk of flight or danger

presented by defendant's release."  *U.S. v. Abuhamra*, 389 F.3d 309, 317 (2d Cir.

2004).  However, because "the court's determination of the viability of alternatives

to detention must be, in every case, a mixed question of fact and law[,] [s]uch

questions are subject to flexible appellate review."  *U.S. v. Berrios-Berrios*, 791

F.2d 246, 251 (2d Cir. 1986) (*citing U.S. v. Hurtado*, 779 F.2d 1467, 1471 (11th

Cir. 1985) (appellate courts should conduct "plenary" review of mixed questions of

law and fact)).

The Bail Reform Act contains a presumption of release (18 U.S.C. §

3142(c)(1)(B)) overcome only if the Court determines that the government can

show "no condition or combination of conditions will reasonably assure the

appearance of the person…" 18 U.S.C. § 3142(e).  As this Court has recognized,

"[u]nder this statutory scheme, 'it is only a 'limited group of offenders' who

should be denied bail pending trial.'"  *U.S. v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007).  If the Court is not satisfied that a personal recognizance or unsecured appearance bond will assure a defendant's appearance, the Bail Reform Act requires the Court to impose the least restrictive condition or combination of conditions necessary to "reasonably assure" the defendant's appearance.  18 U.S.C. § 3142(c)(1)(B).

## II. The District Court's Refusal to Hold the Bail Hearing It Had Scheduled Was Clear Error

The government has charged Zhong with two counts of forced labor (and three related counts) involving Chinese employees of China Rilin Construction Group Co. Ltd. ("China Rilin") who were in the United States to perform construction work on Chinese diplomatic facilities.  (Exhibit A 1-2 ¶¶ 1-2).[1]

On November 17, 2016, Magistrate Judge Reyes approved a bail package for Zhong, who had been arrested on a complaint ("Complaint"), after a hearing that lasted well over an hour.  (Akerman Aff. ¶ 4; Exhibit C 75:10-15).  This package included home confinement – which Pretrial Services recommends – to be monitored by a security firm.  Later that day, District Judge Johnson heard the government's appeal from Judge Reyes' decision and, after a very brief argument, reversed and denied bail.  (Akerman Aff. ¶ 4, Exhibit C 103:25-104:4).  During the

---

[1] The exhibits cited herein (except when noted otherwise) are the exhibits annexed to the Akerman Aff.

appearance before Judge Johnson, the government represented that it would indict Zhong within a month and the trial would take a week or two. (*Id.*).

On December 6, 2016, after he had been indicted, Zhong submitted a letter to the district court, asking to be released on bail and addressing a number of material facts not known to the defense during the initial bail hearing. (Akerman Aff. ¶ 5). These facts included that:

- The defense had secured and translated a copy of the Chinese-language contract between the Chinese workers and China Rilin referenced in the government's complaint as a "bondage contract," and the translation showed the government had misinterpreted key terms upon which it based its argument that the contract was a bondage contract. (Akerman Aff. ¶¶ 26, 58).

- The defense had secured a November 9, 2016 State Department letter stating that "any privileges and immunities to which [the co-defendant] may have been entitled will cease at noon November 11, 2016" (Akerman Aff. ¶ 41; Exhibit C 168), and that the "status of…[the Chinese] workers will cease in 10 calendar days." (Akerman Aff. ¶ 41; Exhibit C 167). This letter refuted the government's assertion at the initial bail hearing that the co-defendant and the

workers had fled to avoid the charges. (Akerman Aff. ¶ 39; Exhibit C 26:7-9, 95:18-21, 96:7-9).

- A China Rilin worker, who had been detained on a material witness warrant, told federal agents in his lawyer's presence that he had been to Niagara Falls and had often walked around New York City while employed by China Rilin. (Akerman Aff. ¶ 64). This statement plainly contradicted a highly inflammatory position taken by the government before Judge Johnson that the workers were "slaves." (Akerman Aff. ¶ 60; Exhibit C 96:14).

- The defense had taken various steps to remove Zhong's access to funds. (Akerman Aff. ¶¶ 69-75). Before Judge Johnson, the government had argued that Zhong had access to unlimited funds that would allow him to flee. (Exhibit C 97:6-16, 98:23-99:16).

- While the government had represented to Judge Johnson that the case would be indicted and tried quickly (Exhibit C 103:18-19), after that appearance, the government had the case deemed "complex" for Speedy Trial Act purposes and represented that it would produce at least 255,000 pages of discovery, including classified information, which would require counsel to obtain security clearances. (Exhibit I 5; Exhibit F).

5

On December 8, 2016, the parties appeared before Chief Judge Irizarry for Zhong's arraignment on the indictment ("Indictment"). (Akerman Aff. ¶¶ 7, 25). Judge Irizarry set a bond hearing for January 9, 2017 and ruled that the government could submit opposition papers to Zhong's December 6 letter by January 3, 2017. (Exhibit H 23:23-24:9; Dkt. 12/8/2016 (Minute Entry)).

The next day, on December 9, 2016, Judge Irizarry issued an additional order *sua sponte,* stating, "No reply to the motion for bond is needed. If counsel wish to reply to the government's response, they may do so at the bond hearing scheduled for Jan. 9, 2017." (Dkt. 12/9/2016 (ORDER as to Dan Zhong)).

On January 3, 2017, the government submitted a 25-page memorandum in opposition to Zhong's request for bail. (Exhibit J). Consistent with the district court's December 9, 2016 Order, Zhong did not file a reply to the memorandum. (Akerman Aff. ¶¶ 9, 31). Rather, Zhong prepared a significant amount of new evidence, including 23 new exhibits, to be submitted to the district court at the January 9, 2017 bond hearing. (*Id.*). Zhong provided copies of these new exhibits to the government prior to the January 9, 2017 hearing. (*Id.* ¶ 31).

Thus, at the January 9, 2017 hearing, the defense was prepared to offer new evidence, including:

- A declaration of Mark Redfield, Assistant Director of the Division of Housing Code Enforcement for Jersey City, who attested that during

an inspection of a workers' residence at 210 Pavonia Avenue, he had not observed any indicia of anyone being locked into the residence, whether through double-key cylinder locks or otherwise ("Exhibit A" ¶ 4 in Exhibit H of the Defense's January 25 Motion")[2], contrary to allegations in the Complaint.  (Exhibit B 10-11 ¶ 19).

- Statements of former China Rilin worker Sun Yanying, who had told the defense that China Rilin employees were free to do what they wanted outside of work and that he was not aware of any workers being held against their will.  (Akerman Aff. ¶ 62).  His testimony was corroborated by photographs he provided of him and other workers visiting tourist sites such as the White House, the Atlantic City Boardwalk, Niagara Falls, Thousand Islands Seaway in upstate New York, and Times Square.  (*Id*. ¶ 63; "Exhibit L" through "Exhibit W" in Exhibit H of Defense's January 25 Motion).

- Testimony from the co-defendant's lawyer regarding a conversation he had with his client and the government during which U.S. Attorney Alex Solomon stated that his office had an arrest warrant for the co-defendant, but could not execute it until the following day due to the

---

[2] When an exhibit is referred to in quotations, *e.g.,* "Exhibit A," it refers to the documents in Exhibit H of the Defense's Motion to Supplement Record filed on January 25, 2017 ("Defense's January 25 Motion"), which is pending.

co-defendant's status.  (Akerman Aff. ¶ 40).  Mr. Solomon told the

co-defendant also that the government was talking to Chinese

authorities and it was likely that, if the co-defendant returned to

China, he would be arrested there.  The co-defendant elected to return

to China nonetheless the next day, as the co-defendant's lawyer

informed the government.  (*Id.*).

On January 9, 2017, the parties appeared before the district court.  (Akerman

Aff. ¶ 32).  Before the proceedings began, the defense received a copy of the

Pretrial Services Report, which counsel had not been aware of previously.[3]  (*Id.*).

Notably, the Report recommended that Zhong be released subject to home

detention with location monitoring, other than for attorney visits, court

appearances, medical employment or work.  Also before the proceedings

commenced, the government provided the defense and the district court with 3500

material for a witness it might call that day.  (*Id.*).

When Chief Judge Irizarry took the bench, she did not address the December

9, 2016 Order, which had provided that the defense would have the opportunity to

reply to the government's January 3, 2017 submission "at the bond hearing

scheduled for Jan. 9, 2017."  (Exhibit D).  Rather, Chief Judge Irizarry read her

---

[3] The Pretrial Services Report is dated November 12, 2016.

decision to deny Zhong bail into the record, thereby precluding the hearing of any arguments or the presentation of new evidence.  (Exhibit D 4:5-17:23).

### III. The District Court's Reliance on the "Flight" of the Co-Defendant and the Workers to Find That Zhong Is a Flight Risk Was Clear Error

At the December 8, 2016 conference, the district court adopted a number of allegations made by the government in arguing against bail, including that the co-defendant had "absconded."  (Exhibit H 21:22-22:10).  When defense counsel asked to respond on that issue, the district court refused.  (*Id.* 21:16-17).  The government also made arguments regarding the alleged flight of the co-defendant and China Rilin workers in its January 3, 2017 memorandum.  (Exhibit J 18-19). Obviously, the district court did not allow the defense to respond to these points or its finding that the co-defendant allegedly having "absconded" supported remand, which the defense would have done through the testimony of Bruce Levy and the State Department correspondence.  (Akerman Aff. ¶¶ 40, 41).

It was plain error for the district court to make its bail decision as to Zhong based, in part, on evidence of supposed flight by the co-defendant, given that this evidence did not relate to or involve Zhong himself.  *U.S. v. Tortora*, 922 F.2d 880, 888, 894 (1st Cir. 1990) ("[d]etention determinations must be made individually and, in the final analysis, must be based on the evidence which is before the court regarding the particular defendant.") (Breyer, J. concurring) (explaining that

9

divergent circumstances of various defendants, including that certain defendants had advance notice of prosecution but did not act inappropriately, made their home detention appropriate as compared to another defendant who was remanded). Thus, even if the co-defendant had fled (the evidence shows he did not), such flight could not be imputed to Zhong.

Moreover, there is no legitimate basis to compare Zhong to the co-defendant or the China Rilin workers. First, the co-defendant and the workers have no meaningful connections to the United States. (Akerman Aff. ¶ 44). By contrast, it is undisputed that Zhong came to this country in 2000 and has been a legal permanent resident since 2010. (*Id.*). He has lived in Livingston, New Jersey since August 2008 in a house he owns jointly with his wife who has been a legal permanent resident since 2008. (*Id.*). Zhong has two daughters, both of whom are U.S. citizens. The youngest daughter is eight and lives with Zhong and his wife. (*Id.*). The oldest attends the New York University College of Dentistry. (*Id.*). Zhong also has a stepson who attends the New Jersey Institute of Technology and is a legal permanent resident. (*Id.*). Furthermore, in response to an allegation by the government that Zhong and his family had not been living at their residence before his arrest (Exhibit G 2), counsel obtained declarations from two of Zhong's neighbors that it intended to offer at the January 9, 2017 hearing. ("Exhibit C" and "Exhibit D" in Exhibit H of Defense's January 25 Motion). The declarations

emphasize the Zhongs' substantial connections to their community and the permanency of their residence at their home. (*Id.*).

Second, Zhong's conduct since the investigation began shows the nature of his ties to the United States, rendering any comparisons to the co-defendant or the workers entirely inapposite. (Akerman Aff. ¶ 45). Zhong knew about this investigation for more than a year, but never fled to China or elsewhere. (*Id.*). In fact, during that time, Zhong travelled to China for vacation, providing his itinerary to the government in advance, in response to which the government raised no concerns. (*Id.*). Notably, though, the government used the information in the itinerary to conduct border interviews with Zhong when he left and when he returned. (*Id.*; *see also* Exhibit C 67:2-5).

The government also speculated that Zhong could seek refuge in Chinese diplomatic facilities (Exhibit C 53:19-24; Exhibit J 3), and the district court cited this possibility as a reason why bail would be inappropriate. (Exhibit D 8:8-11). However, the government has offered no evidence that, if Zhong entered such a facility, the Chinese government would allow him to stay indefinitely. And undercutting its argument, the government told the co-defendant in his lawyer's presence that he would likely be arrested in China. (Akerman Aff. ¶ 46). The government cannot both tell the co-defendant (who has no real connection to the United States) that he will be arrested in China and also represent that Zhong (who

has long been a U.S. resident) would enjoy permanent sanctuary in a Chinese diplomatic facility.

Moreover, the government's contention that bail should be denied because of Zhong's allegedly current connections to the Chinese diplomatic community is contrary to numerous cases, including a number of recent New York cases. *See U.S. v. John Ashe,* 1:15-cr-706 (S.D.N.Y.) (Dkt. 13 Oct. 6, 2015) (releasing to home confinement Antigua's U.N. representative, despite allegations that he was a tremendous flight risk because of substantial connections with high-ranking government officials in his home country and wealthy foreign business people); *U.S. v. Francis Lorenzo,* 1:15-cr-706 (S.D.N.Y.) (Dkt. 30 Oct. 9, 2015) (releasing on home detention Dominican Republic's permanent representative to the U.N.); *U.S. v. Yaming Nina Qi Hanson*, 613 F. Supp. 2d 85, 89-91 (D.C. Cir. 2009) (defendant bailable even with ability to obtain new passport from embassy and flee to China as well as close family ties and property in China); *U.S. v. Alfred Hawit,* 1:15-cr-252 (E.D.N.Y.) (Dkt. 207 Feb. 1, 2016) (finding defendant bailable despite his being a Honduran citizen with significant contacts abroad and means to flee to Honduras); *U.S. v. Ng Lap Seng,* 1:15-cr-706 (S.D.N.Y.) (Dkt. 53 Oct. 23, 2015) (releasing defendant, who had a net worth of $2 billion, several private planes, extensive ties abroad and no ties to the U.S., to home confinement under security firm supervision); *U.S. v. Eduardo Li,* 1:15-cr-252 (E.D.N.Y.) (Dkt. 235 Feb. 24,

2016) (finding defendant bailable despite access to at least $9 million of assets in Costa Rica where he is a citizen and his family resides).

In fact, this Court and others typically have found detention appropriate only when the defendant has indicated through statements or actions the intent or ability to flee. *See, e.g., U.S. v. Baig*, 536 Fed. Appx. 91, 93 (2d Cir. 2013) (defendant had history of using stolen identities); *U.S. v. Zherka*, 592 Fed. Appx. 35, 35 (2d Cir. 2015) (defendant made statements about moving to Europe); *U.S. v. Briggs*, 697 F.3d 98, 102 (2d Cir. 2012) (defendant stated intent to flee or take his own life upon release); *U.S. v. Anderson*, 384 F. Supp. 2d 32, 36-38 (D.D.C. 2005) (defendant used aliases, false identities, and "camouflage passports," and shipped valuable artwork out of United States after home searched); *U.S. v. Hollender*, 162 F. Supp. 2d 261, 264 (S.D.N.Y. 2001) (defendant used fictitious names, and false identification documents were on his computer); *U.S. v. Minns,* 863 F. Supp. 360, 363 (N.D. Tex. 1994) (defendant applied for seven passports from four different countries under five different names while on probation); *U.S. v. Friedman*, 837 F. 2d 48, 50 (2d Cir. 1988) (it "require[s] more than evidence of the commission of a serious crime and the fact of a potentially long sentence to support a finding of risk of flight.") (vacating detention order).

**IV. The District Court Improperly Dismissed the Use of a Security Firm Without Allowing the Defense to Respond to the Government's Arguments on that Issue**

In response to the defense's argument (in the December 6, 2016 letter) that any alleged risk of flight could be addressed through the use of a security firm to monitor the home detention Pretrial Services recommends, the district court spoke unfavorably about using such firms on January 9, 2017, stating that this Court has yet to address the issue squarely and citing this Court's ruling in *Sabhnani* for that proposition. (Exhibit D 12:23-13:11). However, in *Sabhnani*, this Court approved the use of a security firm to monitor home detention because (i) there was a statutory presumption in favor of release, (ii) the home confinement involved on-site visual surveillance and electronic monitoring, (iii) the defendants would pay all costs, (iv) the government had selected the security firm, and (v) there was no claim that the defendants would be a physical threat to the victims if released. 493 F.3d at 78. Given those circumstances, this Court held that "there is no reason in this case to think that the proposed conditions of home confinement cannot reasonably mitigate any concerns about defendants' risk of flight," despite the defendants' connections to foreign countries and the resources they had around the world. (*Id.*).

All of the factors this Court found relevant in *Sabhnani* are present here, except that the defense has selected the security firm at issue. However, the

defense would assent to the use of Stroz Friedberg, the firm the government selected in *Sabhnani*, if the government legitimately has concerns regarding Guidepost Solutions. In fact, counsel has contacted Stroz Friedberg, which confirmed that it would be available for this assignment. Thus, the use of a security firm should be deemed appropriate here and, even if Zhong "pose[s] a serious risk of flight," it cannot be said "no conditions can be imposed that would reasonably assure [his] presence at trial." *Sabhnani*, 493 F.3d at 64.

The district court also raised concerns about the inequitable treatment of criminal defendants that could arise through using a private security firm. (Exhibit D 15:8-14). However, this Court, in finding the monitoring of home detention appropriate in *Sabhnani*, noted that "defendants of lesser means, lacking the resources to flee, might have been granted bail in the first place." 493 F.3d at 78 n.18. Thus, a defendant's access to resources can cut against him. Moreover, Pretrial Services recommends home confinement (Akerman Aff. ¶ 51), demonstrating that such an arrangement is proper. That a security firm can be paid to monitor the home confinement does not somehow transform Pretrial Services' recommendation into one that is inappropriate or inequitable.

Finally, the use of such a firm renders any concerns about Zhong's access to funds far less material. *See Sabhnani*, 493 F.3d at 77 ("the more effectively a court can physically restrain defendants, the less important it becomes to identify and

restrain each and every asset over which defendants may exercise some control in order to mitigate the risk of flight.").

### V. The District Court's Refusal to Permit Zhong to Address the Weight of the Evidence, While Crediting the Government's Arguments in that Regard, Was Clear Error

The district court based its decision to continue Zhong's detention at least in part on the "the weight of the evidence," yet stated that Zhong's attempt to address that issue was an "impermissibl[e] attack on the strength of the government case…" (Exhibit D 4:18-19, 8:5-6, 11:11-13). It was fundamentally unfair and clear error for the district court to credit the government's position about the strength of its case, while denying Zhong the opportunity to address that factor. *See* 18 U.S.C. § 3142(g)(2) ("the judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required…take into account," among other things, "the weight of the evidence against the person."). Indeed, while the government had relied solely on attorney proffers, the defense was prepared on January 9, 2017 to present declarations, photographs and other forms of evidence including the declaration from Mark Redfield, the properly translated contract between China Rilin and its employees, the statements by former China Rilin employee Sun Yanying, and the statement by the former China Rilin worker who had been detained on the material witness warrant, all as detailed above.

16

Moreover, after January 9, 2017, as part of its ongoing investigation in support of its defense of this case, the defense interviewed three additional former China Rilin workers in China. (Akerman Aff. ¶ 65). These individuals all stated that none of the workers had been under any physical restrain and were free to leave their residences. (*Id.* ¶¶ 66-68). Like Mr. Sun, these three workers visited points of interest in the New York area and other cities across the U.S. (*Id.*). Critically, these three workers, collectively, worked in the United States from approximately May 2002 to November 2016. (*Id.* ¶¶ 66-68).

Admittedly, the information gathered during these interviews was not available at the scheduled January 9, 2017 bond hearing. (*Id.* ¶ 65). However, this information is highly material to the merits of Zhong's appeal because it corroborates and supplements two key pieces of evidence that Zhong had intended to address on January 9, 2017, *i.e.*, the above-described Redfield declaration and statements by Sun Yanying. *See Hurtado*, 779 F.2d at 1472 ("either party may expand the record, permitting consideration by the appeals court of evidence not even presented to the trial court."). And, of course, all of this information flatly contradicts the government's statement that the workers were "slaves."

Finally, the district court found it significant that Zhong had been arrested on a complaint, but thereafter was indicted by "a grand jury composed of citizens of this district who found probable cause to believe that the defendant committed the

17

crimes charged in the indictment." (Exhibit D 7:13-19). According to the district court this development "lends support to the government's charges." (*Id.* 7:21-23). This finding was plainly in error given that, to secure an arrest warrant on a complaint, the complaint must "establish probable cause to believe that an offense has been committed and that the defendant committed it…" Fed. R. Crim. P. 4(a). Thus, whether a defendant is arrested on a complaint or indicted, there must be probable cause that he committed a crime, and the issuance of the Indictment does not *a priori* indicate that the government's charges are better supported now than they were when a judge found that the Complaint established probable cause.

## VI. It Was Clear Error for the District Court Not to Consider Procedural Obstacles the Government Revealed Only Following the Appearance Before Judge Johnson

During the appearance before Judge Johnson, the government represented that it would indict Zhong within a month and that the trial would take a week or two. (Exhibit C 103:15-19). Thus, Judge Johnson easily might have understood that this entire matter would be disposed of expeditiously. However, it is now known to defense counsel (as it was known all along to the government) that pretrial proceedings will be very lengthy, for reasons discussed. That Zhong will have to spend a substantial amount of time in prison before his day in court is not only a new fact, but a fact that implicates his due process rights. *See U.S. v.*

*Gonzales Claudio,* 806 F.2d 334, 335, 341 (2d Cir. 1986); *U.S. v. Vitta*, 653 F. Supp. 320, 334, 345 (E.D.N.Y. 1986).

Indeed, Zhong has already spent over three months in prison yet discovery has not even begun, and counsel have not received security clearances. Obviously, there is no way to predict with any certainty when a trial date could possibly be set. As this Court has recognized, "[t]wo district court decisions in this Circuit have found pretrial detention lasting six months to have exceeded due process limitations." *U.S. v. Gonzales Claudio*, 806 F.2d at 340. There can be little doubt that Zhong will spend well over six months in prison before his day in court.

### VII. The New Facts Demonstrate That This Is a Bailable Case

The wealth of information that has been revealed subsequent to the appearance before Judge Johnson justifies the reopening of the bail hearing. *See* 18 U.S.C. § 3142(f)(2)(B) (a detention hearing may be reopened when there is "information…that was not known to the movant at the time of the [detention] hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required."). Crucially, the defense was precluded from presenting this information to the district court on January 9, 2017, when a bail hearing was scheduled to occur, but then abruptly cancelled.

19

Here, the facts, especially those newly discovered, show that (i) Zhong is not a flight risk; (ii) his pretrial detention would be quite lengthy; (iii) Pretrial Services recommends home detention so, even if Zhong is considered a flight risk, home detention is appropriate; (iv) there are no legitimate concerns regarding the use of a security firm to oversee the home detention Pretrial Services recommends; (v) the weight of the evidence on the forced labor charges is far from overwhelming; and (vi) Zhong does not have access to significant financial resources. Thus, this is an eminently bailable case, and the decision to deny bail was clearly erroneous.

Moreover, the district court stated explicitly that, even if the bail issue were reopened, it would find in favor of detention. (Exhibit D 12:14-22). Thus, there is no reason to remand the case for further consideration. *See U.S. v. Ojeda Rios*, 846 F.2d 167, 169 (2d Cir. 1988).

## **CONCLUSION**

For the reasons set forth above and in the Akerman Aff., the district court's decision to deny bail was clearly erroneous and this Court should release Zhong under the terms of a bail package that includes:

- home detention and electronic monitoring of Zhong to be overseen by a security firm (other than for travel with Court permission to New York City and in New Jersey);

- an appropriate cash amount to be determined by the Court;

20

- a bond in an appropriate amount as determined by the Court and secured by Zhong's home in New Jersey and his daughter's house on Long Island;

- the surrendering of passports by Zhong, his wife and children; and

- Pretrial Services supervision.

Dated: New York, New York                    Respectfully submitted,
      February 10, 2017

                    By: /s/ Nathaniel H. Akerman
                        Nathaniel H. Akerman
                        Joshua Colangelo-Bryan
                        DORSEY & WHITNEY LLP
                        51 West 52nd Street
                        New York, New York 10019
                        Telephone: (212) 415-9200
                        *Attorneys for Defendant-Appellant*
                        *Dan Zhong*

**Federal Rules of Appellate Procedure Form 6. Certificate of Compliance With Type-Volume Limit**

Certificate of Compliance With Type-Volume Limit,
Typeface Requirements, and Type-Style Requirements

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a) and the word limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

   ☑ this document contains *4,711* words, **or**

   ☐ this brief uses a monospaced typeface and contains [*state the number of*] lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

   ☑ this document has been prepared in a proportionally spaced typeface using *Microsoft Word 2010 in 14 point-size Times New Roman font*, **or**

   ☐ this document has been prepared in a monospaced typeface using [*state name and version of word-processing program*] with [*state number of characters per inch and name of type style*].

(s) /s/ Nathaniel H. AKerman

Attorney for Dan Zhong, Appellant

Dated: 2/10/2017